# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**ANTHONY BROWN,**
**Alien # A96-002-427,**

      **Petitioner,**

**vs.**　　　　　　　　　　　　　　**Case No. 4:06cv525-RH/WCS**

**ALBERTO GONZALEZ, et al.,**

      **Respondents.**

_____/

## REPORT AND RECOMMENDATION

Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, on November 16, 2006, challenging his indefinite detention by Respondents. Doc. 1. Petitioner is a native and citizen of the Bahamas, who alleged that Respondents are unable to remove him and will be unable to do so in the "reasonably foreseeable future." *Id.* Petitioner seeks release from what is claimed to be an indefinite period of custody and alleges his entitlement to release pursuant to Zadvydas v. Davis, 533 U.S. 678 (2001). Petitioner has been in immigration custody since January 24, 2006, and was ordered removed on April 20, 2004. Doc. 1, pp. 1, 3.

Service of the petition was directed, doc. 3, and Respondents filed a Response on January 23, 2007. Doc. 9. Respondents also filed a supplement to their Response

on February 8, 2007.  Doc. 12.  Despite being advised on numerous occasions that Petitioner could file a reply to the response filed by the Government, docs. 3, 10, 11, 13, and 15,[1] Petitioner has not filed a response though he has written to ask the status of his petition.  Doc. 16.

**Background Facts**

Petitioner has been in immigration custody for just over one year and six months. Petitioner is currently detained in Wakulla County Jail.  Petitioner is not a citizen or national of the United States.  Doc. 9, p. 2; *see also* affidavit of Terry Michael, attachment to doc. 9, pp. 1-13 (hereinafter "Michael affidavit") (doc. 9-2 on the electronic docket, pp. 1-13).  Petitioner was convicted on September 17, 2002, of "throwing [a] deadly weapon" in violation of Florida law and sentenced to four years of incarceration.  Michael affidavit, p. 2; doc. 9-2, p. 2.  Petitioner has prior criminal convictions in the State of Florida for possession of cocaine and unauthorized possession of an ID card or driver's license, both of which resulted in a sentence of one year and one day incarceration.  *Id.*, p. 3; doc. 9-2, p. 3.

Petitioner was encountered by Immigration Agent McCann on September 24, 2002, at the South Florida Reception Center.  Michael affidavit, p. 2; doc. 9-2, p. 2. Petitioner claimed to have entered the United States using a non-immigrant visa.  *Id.* Agent McCann conducted a thorough computer search but was unable to verify

---

[1] Two deficiency orders were entered and documents returned to Petitioner because he failed to include a certificate of service.  Docs. 11 and 13.  The deficiency orders advised Petitioner that he could file the documents properly with a certificate of service.  Docs. 11, 13.  Petitioner also filed a document in the style of a letter to me, doc. 14, which was deemed a motion requesting assistance.  Doc. 15.  Petitioner was given another opportunity to respond to Respondent's arguments.  *Id.*

Petitioner's claim of entering the United States legally.  *Id.*  Petitioner "was processed as

an alien found in the United States without inspection and is amenable to removal under

Sections 212(a)(6)(A)(i), 212(a)(2)(A)(i)(I), 212(a)(2)(A)(i)(II), and 212(a)(2)(B) of the

Immigration and Nationality Act."[2]  *Id.*

On December 5, 2002, Petitioner was served a Notice to Appear at his prison

address.[3]  Michael affidavit, p. 3; doc. 9-2, p. 3; *see* Exhibit A, doc. 90-2, p. 15-36.  The

Notice charged Petitioner with being a native and citizen of the Bahamas, not a citizen

or national of the United States, not having adjusted his status to that of a Lawful

Permanent resident, and not having been admitted or paroled after inspection by an

Immigration Officer.  Ex. A.  After holding a telephonic hearing, the immigration judge

ordered Petitioner removed from the United States to the Bahamas on April 20, 2004.

Michael affidavit, p. 3; Ex. B, doc. 9-2, pp. 3, 37-39.  Petitioner entered immigration

custody on January 24, 2006, and a warrant for removal or deportation was issued.

Michael affidavit, p. 3; Ex. C., doc. 9-2, pp. 40-41.

Petitioner was served an I-229(a) form on January 25, 2006, and advised of the

requirement that he "make timely application in good faith for travel or other documents

necessary to the alien's departure" and that he not "prevent or hamper" his departure.

Michael affidavit, p. 4; *see also* Ex. D, doc. 9-2, pp. 42-51.  That Notice advised

---

[2] In general, the relevant provisions are for: § 212(a)(6)(A)(i) - present without being admitted or paroled; § 212(a)(2)(A)(i)(I) - alien convicted of a crime involving moral turpitude; § 212(a)(2)(B) - alien convicted of two or more offenses with confinement of five years or more; and § 212(a)(2)(A)(i)(II) - alien convicted of an offense relating to controlled substances.  Ex. A.

[3] At that time, Petitioner was incarcerated at Liberty Correctional Institution.  Ex. A.  All references to exhibits are to those attached to the Response, doc. 9, as Petitioner has not submitted any evidence.

Petitioner that he could be subject to criminal charges and imprisonment for wilfully failing or refusing to assist in securing travel documents and in effecting his removal. Ex. D.  Petitioner was provided an Information Sheet regarding requirements he must undertake to assist in his removal.  Michael affidavit, p. 4.  Every item listed on the Information Sheet was checked indicating a large amount of information Petitioner was to provide.  Ex. D, doc. 9-2, p. 44.  Petitioner refused to sign and acknowledge receipt of those documents, although he "did sign the Instruction Sheet and agreed to give a sworn statement."  Michael affidavit, p. 4.  Petitioner's refusal is noted on the I-229(a) form.  Ex. D, doc. 9-2, p. 43.

Petitioner stated under oath that his father was born in the Bahamas and his mother was born in Haiti, and both are deceased.  Michael affidavit, p. 4; see also Ex. D, doc. 9-2, p. 47.  When asked "Of what country are you a citizen and national?" Petitioner wrote, "I do not know, according to what my sister told me I was born in the Bahamas."  Doc. 9-2, p. 46.  He said he was born on June 20, 1972, in Nassau, and did not know of what country his parents were citizens and nationals. *Id.*  He stated that he did not know when or where he entered the United States, answering: "I do not know, I was young." *Id.*  He said he attended Pompano High School in 1994 or 1995, and for ten months attended night school at Dillard High School in Fort Lauderdale in 1992. *Id.* and p. 48.

A formal request for issuance of an emergency travel document was sent to the Consulate General of the Bahamas on January 31, 2006.  Michael affidavit, p. 4; *see* Ex. E, doc. 9-3, pp. 1-2.  That letter states that Petitioner "entered the United States at

[the] Miami International Airport on or about 1984." Ex. E, doc. 9-3, p. 2.[4]  A response

was received on February 3, 2006, acknowledging receipt of the request, but asking

that Petitioner provide more information so that his citizenship could be substantiated.

Ex. F, doc. 9-3, pp. 3-5; Michael affidavit, p. 5.  Petitioner was asked to provide his birth

certificate, passport, school records, and names and telephone numbers of family

members.  Ex. F, doc. 9-3, p. 4; Michael affidavit, p. 5.  Petitioner was notified of the

Consulate's request.  *Id.*

Telephone calls were made to the Consulate on March 14, 2006, and again on

April 6, 2006.  Michael affidavit, p. 5.  Travel documents were not yet available.  *Id.*

A Post Order Custody Review was completed on April 7, 2006.  Michael affidavit,

p. 5.  The recommendation following that review stated:

> Subject claims not to know where he entered the US or when.  Subject is
> a national of the Bahamas.  The Consulate staff is trying to verify the
> information provided by subject.  Subject should remain in custody as the
> Bahamas has provided their nationals with travel documents in the past.  I
> recommend that subject remain in custody until a travel document is
> available.

Michael affidavit, p. 5.  The two relevant supervisory officials both concurred with the

recommendation and Petitioner remained in custody.  *Id.*, at 6.

On June 1, 2006, another travel document request was sent to the Bahamian

Consulate and additional assistance was requested from ICE Headquarters Travel

Document Unit.  *Id.,* at 6; *see* Ex. G.  That letter to ICE Headquarters indicates that the

---

[4] It is unknown where that information was obtained as Petitioner's sworn
statement indicates he does not know when or where he entered the United States.
Additionally, the § 2241 petition form completed by Petitioner also responds with "n/a"
when asked when he entered the United States.  Doc. 1, p. 3.  Petitioner also wrote that
he did not know how long he had "lived in Florida," again writing "n/a."  *Id.*

Consulate of the Bahamas was also contacted concerning a travel document for

Petitioner on February 3, 2006, March 14, 2006, April 6, 2006, and May 18, 2006, but

that a document was "not available." Ex. G, doc. 9-3, p. 7.  It further advises that after

the Consul requested additional information from Petitioner, he was "interviewed

concerning the consulate request and [Petitioner] stated that he did not have any of the

information that the consulate requested." *Id.*

On June 30, 2006, the Consulate advised the travel document was not available

at that time.  Michael affidavit, p. 5.  Another Post Order Custody Review was

completed on July 12, 2006.  *Id.*, at 6.  The recommendation following this second

review for continued detention stated:

> Subject claims not to know where he entered the US or when.  Subject is
> a national of the Bahamas.  The government of the Bahamas has been
> unable to verify the nationality of the subject.  Subject has been in custody
> since January 23, 2006.  Subject can be released on an Order of
> Supervision with weekly visits to the nearest DRO office with proof of
> trying to obtain a Bahamian travel document.  I recommend that the
> subject be released from custody until a travel document is available.

Michael affidavit, pp. 6-7.  The Supervisory Review Officer did not concur with that

recommendation.  *Id.*, at 7.  The Miami Field Office Director then approved that

Petitioner should be held in detention.  *Id.*  A letter advising of the decision to continue

Petitioner's detention was issued and served on Petitioner in mid-August, 2006.  *Id.*

That letter includes a statement to Petitioner that the Bahamas regularly issues travel

documents to repatriate its nationals and there was no indication at that time "that a

certificate [would] not be issued for [his] repatriation."  Ex. H, doc. 9-3, p. 9.

On August 30, 2006, the Consulate of the Commonwealth of the Bahamas wrote

a letter advising:

I am to convey that your request for an emergency travel document on behalf of Mr. Brown was denied.

Please note that Mr. Brown's packet did not include any Bahamas Government issued documents.  Nevertheless, the information was forwarded to the Bahamian authorities who conducted the customary investigation.  Based on the lack of documentation presented and no evidence to support Mr. Brown's claim that he is a Bahamas citizen the request was denied.

Michael affidavit, p. 7; Ex. I, doc. 9-3, p. 12.  Petitioner entered the custody of ICE at the

Wakulla County Jail in Crawfordville, Florida.  Michael affidavit, p. 8; doc. 9-2, p. 8.

The affidavit from Terry Michael notes that Petitioner's sworn statement advises

that his Mother was Haitian.  Michael affidavit, p. 8.  Mr. Michael explains:

This is important because people born in the Bahamas from Haitian parents may not be a citizen of the Bahamas.  In many cases the parents who are Haitian must register their son or daughter with [the] Bahamian Government and apply for citizenship.  Citizenship in the Bahamas is not automatic.  But before, [sic] the Haitian government will begin to look into his case the Bahamian government must have completed a full search for his registration documents and notify ICE with their findings.  According to the letter from the Bahamian Consulate, [Petitioner] never provided any proof of citizenship.

Michael affidavit, p. 8; doc. 9-2, p. 8.

Petitioner was served with another I-229(a) form on December 21, 2006.

Michael affidavit, p. 8; Ex. J, doc. 9-3, p. 14.  Petitioner was reminded of the

requirements of Section 243(a) that he "make timely application in good faith for travel

or other documents necessary to the alien's departure" and that he not "prevent or

hamper" his departure.  Michael affidavit, p. 8.  Petitioner was provided a second

Information Sheet regarding requirements he must complete within 30 days to assist in

his removal.  *Id.*, p. 9.  Once again, every box on that form had a checkmark indicating

all of the documentation and information that would be required from Petitioner.  Ex. J,

doc. 9-3, p. 15.  Petitioner was also served a letter requiring him to provide a family tree,

including "dates of births, nationalities, addresses, and phone numbers for such

persons, whether in his country of nationality and/or citizenship or elsewhere, and his

past residences, schools attended," and the like.[5]  Michael affidavit, p. 9.  Petitioner was

to provide that information within one week, by December 27, 2006.  *Id.*  The letter

included the statement that "[a]ny attempt not to comply with this requirement is a direct

attempt to hamper your removal."  Ex. J, doc. 9-3, p. 16.  In the event that he took

actions to prevent his removal or obstruct issuance of a travel document and thus

committed a criminal offense, Petitioner was read his Miranda rights.  Michael affidavit,

p. 9; *see also* Ex. J, doc. 9-3, p. 17.  Petitioner again refused to sign and acknowledge

receipt of any of those documents.  Ex. J, doc. 9-3, p. 17.  Petitioner also refused to

sign the "Fiche Signaletique du Deporte," which is described by Mr. Michael as "a form

required by the Haitian authorities."  Michael affidavit, p. 9.

On December 21, 2006, a travel document request was sent to the Haitian

Consulate.  Michael affidavit, p. 9; Ex. K, doc. 9-3, p. 20.  The request notes that it was

being re-submitted to that Consulate General of Haiti after the Bahamian Consulate

denied Petitioner's citizenship claim.  *Id.*  On that same day, another Post Order

Custody Review was completed.  Michael affidavit, p. 9.  The recommendation noted

that the Bahamas had denied issuance of a travel document "due to a lack of any

Bahamian issued documents and the lack of evidence to support subject's claim to

being a citizen of the Bahamas."  *Id.*, at 10.  The recommendation was for Petitioner to

---

[5] It is noted that in the December 21, 2006, letter, it states: "According to the file you are a native and citizen of Haiti."  Ex. J.

remain in ICE's custody "until the Consulate of Haiti issued a travel document since Petitioner's "mother is a citizen of Haiti." *Id.* The recommendation concluded, "There is every reason to believe that a travel document will be issued in the foreseeable future. This officer recommends that the subject remain in detention until removed, but if subject is to be released, release on bond and place on ISAP." *Id.*

The Haitian Consulate quickly responded to the request for travel document on December 26, 2006. Michael affidavit, p. 10. The response provided:

> In the case of [Petition] our office cannot establish that the person is a national of Haiti. Mr. Brown was born in the Bahamas from a Bahamian father according to the documents submitted to our office.

*Id.;* Ex. L, doc. 9-3, p. 32. The consulate did not acknowledge that Mr. Brown's mother, Mella Sanders, was born in Haiti. Michael affidavit, p. 10; doc. 9-3, p. 32. Petitioner failed to provide the family tree as requested by the December 27th deadline. Michael affidavit, p. 10.

Petitioner was served a third I-229(a) form on January 4, 2007. Michael affidavit, p. 11; Ex. M, doc. 9-3, p. 34. Petitioner was also served a "Notice of Failure to Comply Pursuant to 8 CFR 241.4(g)." Michael affidavit, p. 12; ex. M. Petitioner was again reminded of Section 243(a)'s requirements that he "make timely application in good faith for travel or other documents necessary to the alien's departure" and that he not "prevent or hamper" his departure. *Id.*, at 11. Petitioner was provided another Information Sheet with instructions to provide certain information within 30 days. *Id.* Petitioner was once again served a letter requiring him to provide ICE with a family tree, including dates of births, nationalities, addresses, and phone numbers for such persons, whether in his country of nationality or citizenship or elsewhere, and his past

residences, schools attended, and the like.  *Id.*  Petitioner was to provide that

information by January 16, 2007.  *Id.*  Petitioner was also read his Miranda rights once

again.  *Id.*  On this third occasion, Petitioner signed and acknowledged receipt of the I-

229(a) form, the Instruction Sheet, the Miranda Rights notification, and receipt of a letter

to him concerning the travel document request.  Ex. M.

As noted earlier, Petitioner averred in his sworn statement to ICE officials that he

attended Pompano Beach High School in approximately 1994-1995.  Michael affidavit,

p. 12; *see also* Ex. D.  Petitioner said he attended that high school for approximately

two years, but did not graduate.  Ex. D.  Petitioner also stated he attended night school

at Dillard High School in 1992.  Ex. D.  Letters were sent to both of those schools in

early January, 2007, requesting a copy of his personnel or school file.  Michael affidavit,

p. 12; Ex. O, doc. 9-4, pp. 2, 6.  Included in the letters was Petitioner's birth date of June

20, 1972, his Alien registration number, a social security number, and a list of aliases

Petitioner had used.  Ex. O.  A subpoena was also issued on January 23, 2007, to the

Registrar's Office of both the Pompano Beach High School and the Dillard High School,

to provide information and any records or documents concerning Petitioner.  Ex. P, doc.

9-4, pp. 11-12.

By January 16, 2007, Petitioner had failed to comply for the second time with the

request to provide a family tree.  Michael affidavit, p. 12.  In his sworn statement,

Petitioner did identify two family members in the United States who are citizens, his

brother George Brown and his sister Angela Isaac.  Ex. D.  He did not have addresses

for either one.  *Id.*

No response had been received from either of the two high schools at the time the Response was filed on January 23, 2007.  Michael affidavit, p. 12.  However, a supplemental Response was filed on February 8, 2007, stating that searches at both schools "revealed no records pertaining to Mr. Brown, the Petitioner."  Doc. 12, p. 2; *see also* Doc. 12, exhibit C, doc. 12-2, pp. 18-19.   The letters requesting records from the high schools were returned to Respondent Michael Rozos, the Field Office Director.  Doc. 12, ex. C.  Each letter contains a stamp from the "Records Custodian" that a "thorough search of" their files from 1930 to the present revealed no records pertaining to Petitioner.  *Id., doc.* 12-2, pp. 18-19.

Petitioner was served yet another I-229(a) form on January 26, 2007.  Michael supplemental affidavit, Doc. 12, attachment, p. 11; Doc. 12, ex. A.  Petitioner was also served a "Notice of Failure to Comply Pursuant to 8 CFR 241.4(g)."  Michael supplemental affidavit, Doc. 12, attachment, p. 11; Doc. 12, ex. A.  Petitioner was again reminded of Section 243(a)'s requirements that he "make timely application in good faith for travel or other documents necessary to the alien's departure" and that he not "prevent or hamper" his departure.  *Id.*  Petitioner was provided another Information Sheet with instructions to provide certain information within 30 days.  *Id.*  Petitioner was again served a letter requiring him to provide ICE with a family tree,[6] including dates of births, nationalities, addresses, and phone numbers for such persons, whether in his country of nationality or citizenship or elsewhere, and his past residences, schools attended, and the like.  *Id.*  Petitioner was to provide that information by February 9,

---

[6] This time, the letter to Petitioner provides: "According to the file you are a native and citizen of UNKNOWN."  Doc. 12, exhibit A.

2007.[7]  *Id.*  Petitioner was also read his *Miranda* rights once again.  *Id.*  On this fourth

occasion, Petitioner signed and acknowledged receipt of the documents.  Michael

supplemental affidavit, Doc. 12, attachment, p. 11; Doc. 12, ex. A.

On January 26, 2007, Petitioner was provided with a Notice of Failure to Comply

form pursuant to 8 CFR 241.4(g).  Doc. 12, exhibit B.  That notice indicated that his

custody status had again been reviewed and the determination was made that he would

"not be released from the custody of U.S. Immigration and Customs Enforcement (ICE)

at [that] time."  *Id.*  Petitioner was advised that if he failed to provide the various types of

information requested, § 241(a)(1)(c) permits "extension of the removal period."  *Id.*

Petitioner was notified that his removal period was being extended.  *Id.*  Furthermore,

because he had "failed to assist in obtaining a travel document" and had "failed to

comply with" his obligations to assist in his removal and was deemed to be acting to

prevent his removal from the United States, he was advised that he would remain in ICE

custody until he could show he was cooperating in removal efforts.  *Id.*

Petitioner has been identified as "a 'Failure to Comply' case" and ICE officials

contend that he "has concealed his identity."  Michael affidavit, p. 13.  The affidavit by

Terry Michael, a Deportation Officer with ICE, asserts that Petitioner "has not provided

any contact information for any of his relatives."  *Id.*  He also avers that Petitioner "has

not provided any documents to support his claim that his claim that he is a citizen of the

Bahamas."  *Id.*

> If [Petitioner] was born in Bahamas but by any parent from another
> country, he would be a citizen of what his parent is unless he can provide

---

[7] As the supplement was filed on February 8, 2007, doc. 12, it is unknown
whether Petitioner provided any of the required information or documentation.

proof that his parents registered him in the Bahamas.  It is unclear of his citizenship at this time.  Subpoenas have been sent out in search for foreign identity documents, which will provide proof of where he is a citizen.  He has not provided any valuable family information to any of the consulates of ICE.

Michael affidavit, p. 13.

## Respondents' Arguments, doc. 9

Respondents contend that Petitioner's detention is lawful and reasonable in that Petitioner "has failed to assist in his removal as required by section 243(a) of the INA." Doc. 9, p. 3.  Respondents also argue that Petitioner "has not shown that his removal is not likely to occur in the reasonably foreseeable future."  *Id.*, at 5.  Thus, Respondents contend that Petitioner "has not met the burden-shifting prerequisite in <u>Zadvydas</u>" that there is no significant likelihood of removal in the reasonably foreseeable future.  *Id.*, at 7.  Respondents final argument is that as an inadmissible alien with several criminal convictions, the Government may continue to detain him beyond the statutory removal period.  *Id.*, at 8-9.

## Analysis

This Court has jurisdiction over this § 2241 habeas petition as Petitioner is not challenging a final order of removal, but only seeking release from what he asserts is an unlawful and indefinite period of detention pursuant to <u>Zadvydas v. Davis</u>, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).  In <u>Zadvydas</u>, the United States Supreme Court considered a challenge to 8 U.S.C. § 1231(a)(6) and was asked to decide whether the statute authorized indefinite detention of a removable alien.[8]  The Court

---

[8] Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States.  8 U.S.C. § 1231(a)(1)(A).

held that the continued detention of legal permanent aliens beyond the mandated

90-day removal period was permissible under the Constitution, but only for as long as

was "reasonably necessary to bring about that alien's removal from the United States."

*Id.*, at 689, 121 S. Ct. at 2498.  The Court interpreted the statute to avoid constitutional

threat by concluding that "once removal is no longer reasonably foreseeable, continued

detention is no longer authorized by statute."  *Id.,* at 699, 121 S.Ct. at 2503.  For the

sake of uniform administration, the Court held that "the presumptive period during which

the detention of an alien is reasonably necessary to effectuate his removal is six

months; after that, the alien is eligible for conditional release if he can demonstrate that

there is 'no significant likelihood of removal in the reasonably foreseeable future.' "

Clark v. Martinez, 543 U.S. 371, 125 S.Ct. 716, 722, 160 L.Ed.2d 734 (2005), *quoting*

Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505.

     In Clark v. Martinez, *supra*, the Court extended its interpretation of 8 U.S.C. §

1231(a)(6) to inadmissible aliens.[9]  The Court concluded that there was no reason why

the period reasonably necessary to effect removal would be longer for an inadmissible

alien than for an admissible alien.  Clark, 543 U.S. at 386, 125 S.Ct. at 727.  Thus, it

held that the 6-month presumptive detention period prescribed in Zadvydas should be

applicable.  *Id.*  Accordingly, under Clark and Zadvydas, when an alien shows that he

has been held more than six months beyond the removal period and his removal is not

---

[9] The relevant statute provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  8 U.S.C. § 1231(a)(6), *quoted in* Benitez v. Wallis, 402 F.3d 1133, 1134 (11th Cir. 2005).

reasonably foreseeable, a § 2241 petition should be granted.  Clark, 543 U.S. at 386-387, 125 S.Ct. at 727; Benitez v. Wallis, 402 F.3d 1133, 1135 (11th Cir. 2005) (relying on Clark to hold that "an inadmissible alien can no longer be detained beyond the statutory 90-day removal period of § 1231(a)(1), where there was no significant likelihood of removal in the reasonable foreseeable future.").

Section 1231(a)(1)(A) provides a 90-day period of time to remove an alien.  8 U.S.C. § 1231(a)(1)(A).  However, the removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).[10]  Thus, § 1231(a)(1)(C) expressly permits an alien to be detained longer than the presumptive removal period if the alien acts or conspires to prevent his removal.  Lema v. I.N.S., 341 F.3d 853, 856 (9th Cir. 2003) (concluding that "notwithstanding Zadvydas, the statutory exception of 8 U.S.C. § 1231(a)(1)(C) (the provision at issue here) authorizes the INS to continue detaining an alien whose refusal to apply in good faith for travel documents prevents the INS from removing him from the United States."); see, e.g., Phillippe v. Gonzales, 2007 WL 778966 (N.D. Fla. March. 9, 2007).

In Sango-Dema v. District Director, I.N.S., 122 F.Supp.2d 213 (D. Mass. 2000),[11] the court denied habeas relief where the petitioner was found to be "the cause for the

---

[10] Aliens must be detained during the "removal period."  8 U.S.C. § 1231(a)(2). After that period, aliens may be detained or released subject to certain conditions of release.  8 U.S.C. § 1231(a)(6).

[11] This case was decided before Zadvydas.

long delay."  The court concluded that "an alien cannot trigger [a constitutional right to be free from indefinite detention by the INS] with his outright refusal to cooperate with INS officials."  Sango-Dema v. District Director, I.N.S., 122 F.Supp.2d at 221.

In another case decided in the wake of Zadvydas, Powell v. Ashcroft, 194 F.Supp.2d 209 (E.D. N.Y. 2002), the court noted that Zadvydas was concerned with the constitutionality of § 1231(a)(6) where aliens were in " ''deportation limbo because their countries of origin had refused to allow [them] entrance.' "  Powell, 194 F.Supp.2d at 211, citing Sango-Dema, 122 F.Supp.2d at 221 (explaining Zadvydas).  The court found Zadvydas inapplicable because it "did not discuss the constitutionality of Section 1231(a)(1)(C) and the tolling of the removal period during the time of an alien's non-cooperation."  Powell, 194 F.Supp.2d at 212,[12] citing Guner v. Reno, 2001 WL 940576 (S.D. N.Y. Aug. 20, 2001).  The court held that petitioner's continued detention was appropriate because he had not "provide[d] accurate and complete information to the INS," and that after he did so, it was likely that he would be removed.  Powell, 194 F.Supp.2d at 212.  See also Archibald v. I.N.S., 2002 WL 1434391, *8 (E.D. Pa. July 1, 2002) (finding the case factually distinguishable from Zadvydas where "Archibald's detention [was] a direct result of his seeking relief from deportation" and holding that because his indefinite detention was a result of his requesting a stay, he could not "be heard to complain[] that the time period during which he has been detained constitute[d] a denial of due process."); Thevarajah v. McElroy, 2002 WL 923914 (E.D. N.Y. Apr. 30, 2002) (holding that nearly five years in the custody of INS was constitutional following

---

[12] In Powell, the petitioner provide a false name, place of birth, and date of entry. 194 F.Supp.2d at 210-11.

*Zadvydas* because continued detention was lengthened largely because of petitioner's own actions); *cf.* Seretse-Khama v. Ashcroft, 215 F.Supp.2d 37 (D. D.C. July 22, 2002) (rejecting respondent's argument that petitioner "has not cooperated in obtaining travel documents because he told Liberian officials that he did not want to return to Liberia" and noting that the INS had not argued that "petitioner refused to request travel documents or refused to be interviewed by Liberian officials" and did not deny "his Liberian citizenship, or gave false or misleading information that impeded the issuance of travel documents.").

In another case, Pelich v. I.N.S., 329 F.3d 1057 (9th Cir. 2003), the court found that petitioner's detention was "indefinite only because he refuse[d] to cooperate with the Immigration and Naturalization Service's ("INS") efforts to remove him." Pelich, 329 F.3d at 1057. In such circumstances, the court concluded that the petitioner had "no cause to complain" because petitioner had "the 'keys [to his freedom] in his pocket' ", and affirmed the denial of the § 2241 habeas petition. 329 F.3d at 1057-58, 1060, *quoting* Parra v. Perryman, 172 F.3d 954, 958 (7th Cir. 1999). The basis for the ruling was "self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." Pelich, 329 F.3d at 1060.

Additionally, relying on the decision from Powell v. Ashcroft, *supra*, which found that the removal period may be tolled where the alien acts to frustrate the Government's efforts to effect his or her removal, the Eastern District of New York has explained the various situations which have been held to toll the removal period:

> Section 1231 states that if an alien acts to frustrate the INS'[s] ability to
> remove him, the removal period is tolled during the period of the alien's

actions. 8 U.S.C. § 1231(a)(1)(C); Powell v. Ashcroft, 194 F.Supp.2d 209,
210 (E.D. N.Y. 2002).  The limited case law on what constitutes a
"frustration of removal" has not interpreted this phrase expansively: courts
have only tolled the removal period in cases where the alien has sought
and received a stay of removal through judicial action (see Akinwale v.
Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002)), or where the alien has
demonstrated some sort of bad faith failure to cooperate, such as
providing the INS with false or inconsistent information regarding his
identity or country of origin (see Powell, supra; Ncube v. INS, No. 98 Civ.
0282, 1998 WL 842349 at *16 (S.D. N.Y. Dec. 2, 1998)), or refusing to
complete travel arrangements or name a country for deportation (Riley v.
Greene, 149 F.Supp.2d 1256, 1262 (D. Colo. 2001); Sango-Dema v.
District Director, 122 F.Supp.2d 213, 221 (D. Mass. 2000); Cf. Ford v.
Quarantillo, 142 F.Supp.2d 585, 588 (D. N.J. 2001) (ordering release of
alien detained for 14 months, even though he misrepresented his country
of origin)).  Indeed, as Seretse-Khama has held, a petitioner's truthful
statement (such as expressing that he did not wish to return to his country
of origin) which is later adopted by the country of origin as a reason for not
wanting to repatriate that alien, is not an example of refusal to cooperate
under § 1231(a)(1)(C), and cannot be used as a grounds for extending
post-removal detention.  Seretse-Khama v. Ashcroft, 215 F.Supp.2d 37,
50-53 (D. D.C. 2002).

Rajigah v. Conway, 268 F.Supp.2d 159, 165 (E.D. N.Y., 2003).  In Rajigah, the court

concluded that the petitioner did not act in bad faith simply because he requested a stay

of removal and "availed himself of judicial process and communicated to the Guyanese

embassy his plans to" file an action in court.  268 F.Supp.2d at 166.

Cited in Rajigah is Seretse-Khama v. Ashcroft, 215 F.Supp.2d 37 (D. D.C. 2002).

There, the court determined that an alien has not hindered his removal simply because

he tells the Consul of his country of citizenship that he does not want to return.  215

F.Supp.2d at 51.  The court noted that the petitioner had not "refused to request travel

documents or refused to be interviewed by Liberian officials."  Id.  No claims were

before the court that the petitioner had denied his citizenship, "gave false or misleading

information that impeded the issuance of travel documents."  Id.  Petitioner truthfully

answered the Consul's questions during an interview, but "honestly told the Consul that

he did not want to return to Liberia in light of his lack of family in or ties to Liberia, which

he left . . . when he was only eight years old."  *Id.*  The court concluded that such a

statement without more does not amount to a "bad faith failure to cooperate."  *Id.*[13]

In this case, Petitioner has met his initial burden under <u>Zadvydas</u>.[14]  He has

shown without dispute that he has been held in immigration custody since January 24,

2006, and that Bahamian officials have repeatedly refused to issue travel documents.

Thus, he has shown that it is not likely that he can be removed.  It is now the

---

[13] In a footnote, the court surveyed the case law on the issue of what "constitutes an affirmative act that prevents one's return" or removal:

> Furthermore, most of the case law was decided before the Court's ruling in <u>Zadvydas</u>.  *See, e.g.*, <u>Bini v. Aljets</u>, 2002 WL 535083, 36 Fed.Appx. 868 (8th Cir. 2002) (alien who obtained stay of proceedings in district court prevented his removal); <u>Powell v. Ashcroft</u>, 194 F.Supp.2d 209, 210-211 (E.D. N.Y. 2002) (alien who claimed in four affidavits that he was from U.S. Virgin Islands, Jamaica, Trinidad, and Canada, and provided false name and false date of entry, prevented his removal); <u>Riley v. Greene</u>, 149 F.Supp.2d 1256, 1262 (D. Colo. 2001) (alien who admitted he refused to complete travel arrangements and refused to name any country for deportation); <u>Sango-Dema v. District Director</u>, 122 F.Supp.2d 213, 221 (D. Mass. 2000) (alien who refused to provide passport and birth certificate, and refused to communicate with embassy officials or complete application for documents); <u>Ncube v. INS</u>, 1998 WL 842349, *16 (S.D. N.Y. Dec. 2, 1998) (failing to provide INS with passport or proof of identification or nationality; many statements false or at least contradictory); *cf.* <u>Ford v. Quarantillo</u>, 142 F.Supp.2d 585, 588 (D. N.J. 2001) (ordering release of alien detained for 14 months, even though he misrepresented his country of origin).

215 F.Supp.2d at 51, n.18.

[14] <u>Zadvydas</u> established a burden-shifting analysis and, after the presumptive six month removal period has expired, an alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." <u>Zadvydas</u>, 533 U.S. at 701, 121 S.Ct. at 2505.

Government's obligation to respond with evidence sufficient to rebut Petitioner's showing.

It light of the Government's unopposed evidence, Petitioner's six-month period of removal pursuant to <u>Zadvydas</u> has been tolled as permitted by 8 U.S.C. § 1231(a)(1)(A).  It is undisputed that the Consulates of both the Bahamas and Haiti have refused to issue travel documents for Petitioner because neither country has been able to substantiate a claim for citizenship by Petitioner.  There is initially some concern for Petitioner's plight.  An alien who enters this county as a young child may not have personal memory of the precise date or location of his entry into the United States. However, even without personal memory, it is doubtful that the topic of a family's arrival into the United States and the establishment of a new home was not discussed in Petitioner's presence over the years.  Further, Petitioner was born in 1972, and there is evidence he came into this country in 1984.  A twelve year old would remember this event in some detail.

Further, Petitioner has a sister who he knew at one time lived in Fort Lauderdale. There is no evidence as to what Petitioner has done to try to contact this sister for family information and history.  Petitioner also identified a brother, but provided no information about his efforts to contact him either.

Petitioner has provided the most minimal of personal information for himself, and what he has provided does not appear to be accurate or correct.  Petitioner said he attended Pompano Beach High School in approximately 1994 or 1995, but did not graduate.  Petitioner also stated he attended night school at Dillard High School in 1992.  Neither of those schools could find any record of Petitioner's attendance.  It is not

likely that both of these schools would be unable to locate records of Petitioner had he actually attended there.  Perhaps the problem is that Petitioner has used aliases.  It is noted that on the Judgements from Petitioner's various criminal convictions in Broward County, Florida,  several identities for Petitioner Anthony J. Brown are listed.  Doc. 9, ex. A.  He has also been known as:  Jeff A. Brown, James William, and Charles Howard.

Numerous times Petitioner was provided an Information Sheet with an outline of requirements he needed to provide to assist in his removal.  Several of those items Petitioner should have been able to provide, such as: "names and addresses of family and friends residing in the United States and request that they contact your embassy or consulate in the United States, in order to facilitate the issuance of a travel document." Doc. 9, ex. D.  He should have also been able to apply for a travel document from the embassy or consulate, and provide INS with written copies of his requests, and the responses received.  *Id.*

Several times Petitioner was served with letters requiring him to provide a family tree, with dates of births, nationalities, addresses, and phone numbers for relatives, whether in this country or elsewhere, so that information could be gathered on his behalf.  Petitioner never complied.  Petitioner was directed to list past residences, and the like, but again, he has not provided any information.

In summary, Respondent has shown that Petitioner has hindered the removal process.  The removal period has been tolled by Petitioner's lack of meaningful assistance.  Consequently, this § 2241 petition should be denied.

Accordingly, it is **RECOMMENDED** that the petition for a writ of habeas corpus, doc. 1, filed by Anthony Brown pursuant to 28 U.S.C. § 2241, be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on August 22, 2007.

s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**